# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **JOHN DOE 3**<br>c/o Leeseberg Tuttle<br>175 South Third Street, Penthouse One<br>Columbus, Ohio 43215 | Case No: 2:23-cv-04008 |
| Plaintiff, | District Judge _____ |
| vs. | Magistrate Judge _____ |
| **GALLIA COUNTY LOCAL SCHOOLS BOARD OF EDUCATION**<br>4836 State Route 325<br>Patriot, Ohio 45658 | |
| and | **COMPLAINT AND JURY DEMAND** |
| **JAMES MICHAEL JACOBS, Individually and as former Principal of River Valley High School**<br>413 Buckthorne Drive<br>Lexington, South Carolina 29072 | |
| and | |
| **OTHO EDWARD MOORE, Individually and as former Administrator and/or Acting Principal of River Valley High School**<br>2600 Addison Pike<br>Gallipolis, Ohio 45631 | |
| and | |
| **MICHAL PAIGE HUCK, Individually and as former Teacher and Cheerleading Coach at River Valley High School**<br>42B Hawthorne Lane<br>Bidwell, Ohio 45614 | |
| and | |

MATTHEW HUCK, Individually and as
former Teacher and Wrestling Coach at
River Valley High School
1789 Addison Pike
Gallipolis, Ohio 45631

           Defendants.

## INTRODUCTION

This Complaint arises from the grooming and sexual abuse of Plaintiff John Doe 3 when he was a minor student at River Valley High School ("RVHS") in the Gallia County Local Schools, by Defendant Michal Paige Huck ("Paige Huck") and Defendant Matthew Huck ("Coach Huck"), who were married at the time. This Complaint also arises from the deliberate indifference to known abuse and abject failure of Gallia County Local School District employees, including Defendants James Michael Jacobs and Otho Edward Moore (collectively "Administrators") and the Defendant Gallia County Local Schools Board of Education (the "BOE") to properly investigate and report the abuse to law enforcement and/or Children's Services, and to take steps to prevent continued abuse of its students, including Plaintiff herein.

From 2007-2008, Plaintiff, a then-high school student at River Valley High School, was groomed and sexually abused on multiple occasions by Paige Huck, including sexual intercourse approximately 50-60 times. The abuse took place with the assistance, facilitation, and knowledge of her then-husband, Coach Huck. At all relevant periods of time, both Paige Huck and Coach Huck were employees of RVHS. Paige Huck served as a substitute teacher and cheerleading coach and Coach Huck served as a teacher and wrestling coach, as well as advisor for the FFA club. This sexual abuse occurred in the Hucks' home, on school grounds, and at other private homes and hotels.

Importantly, Plaintiff was not the only student at River Valley High School who was sexually abused by Paige Huck, as will be detailed herein. In fact, Paige Huck was sexually

abusing RVHS students for nearly two decades, and John Doe 3 was just another victim along the way. The BOE, Coach Huck, and the Administrators had actual and constructive knowledge of Paige Huck's history of sexual misconduct with students and the risk she posed. Yet despite such knowledge, they intentionally and/or recklessly allowed and condoned her presence on campus and her interactions with students, creating an environment in which such sexual abuse could and did occur to Plaintiff and several others.

## JURISDICTION AND VENUE

1.      This Court has exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 insofar as this Complaint raises issues under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.*, as well as the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims asserted by Plaintiff form part of the same case or controversy as the constitutional and federal claims.

3.      Venue is proper in the Southern District of Ohio, Eastern Division, under 18 U.S.C. §1965 and 28 U.S.C. §1391(c), as the claims arise in this district and nearly all Defendants reside or maintain a principal place of business within the district.

4.      In this civil action, it is alleged that, as a result of an omission or failure to adhere to an official policy or custom attributable to the BOE, Plaintiff suffered an invasion of his rights to bodily integrity, which are protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. Plaintiff suffered deprivation of these rights during his junior and senior years (2007-2008).

5.      Despite reports made to RVHS personnel, including but not limited to the Administrators, all of whom were authorized officials of the BOE, the aforementioned conduct

was not investigated or reported to the Title IX coordinator, the Gallia County Sheriff's Department, or Gallia County Jobs and Family Services. This omission or failure to act constitutes deliberate indifference to the rights and wellbeing of Plaintiff and other students. The deprivation of Plaintiff's constitutionally protected rights is actionable under 42 U.S.C. §1983. The deliberate indifference of school officials constitutes a state-created danger actionable under 42 U.S.C. §1983.

6. In this civil action, it is further alleged that Defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.* as Plaintiff suffered sexual abuse and harassment that was so severe, pervasive, and objectively offensive that it effectively denied Plaintiff equal access to education. Defendants had actual knowledge of such abuse, and their deficient response to these allegations amounted to deliberate indifference.

7. All of Plaintiff's claims alleged herein are connected to and stem from childhood sexual abuse as defined by Ohio Rev. Code §2305.111 and are therefore properly asserted in this complaint.

## PARTIES

8. PLAINTIFF JOHN DOE 3 was enrolled as a minor student at RVHS during the time of the alleged sexual abuse and deliberate indifference of school personnel. Plaintiff was a resident of Gallia County for all relevant periods of time herein. Plaintiff's date of birth is January 19, 1990.

9. DEFENDANT GALLIA COUNTY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ("BOE") is a political subdivision of the state of Ohio with its administrative office and principal place of business located at 4836 State Route 325, Patriot, Ohio 45658 in Gallia County. The BOE receives, and at all relevant times received, federal and state funding

for the provision of public education and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.*

10.     DEFENDANT JAMES MICHAEL JACOBS ("Principal Jacobs") was Principal at RVHS during Plaintiff's time as an RVHS student, and during the BOE's employment of Defendants Michal Paige Huck and Matthew Huck.

11.     DEFENDANT OTHO EDWARD MOORE ("Principal Moore") was an Administrator, Acting Principal and/or Assistant Principal at RVHS during Plaintiff's time as an RVHS student, and during the BOE's employment of Defendants Michal Paige Huck and Matthew Huck.

12.     DEFENDANT MICHAL PAIGE HUCK ("Paige Huck") was the spouse of Defendant Matthew Huck and resident of Gallia County for all relevant periods of time herein. She is a former substitute teacher and cheerleading coach at RVHS. She is now the ex-wife of Coach Huck.

13.     DEFENDANT MATTHEW HUCK ("Coach Huck") is today and was for all relevant periods of time the vocational agriculture teacher and head wrestling coach at RVHS. Coach Huck was a resident of Gallia County for all relevant periods of time herein.

14.     The BOE, by virtue of the acts and/or omissions the Administrators, and employee Coach Huck, had actual and constructive notice, and was deliberately indifferent to the sexual abuse of RVHS students, including Plaintiff.

15.     Any and all acts or omissions alleged herein are attributable to the BOE and its staff, faculty, and/or administrators. Such acts or omissions were done in the scope of employment. All acts or omissions alleged herein are attributable to the BOE as RVHS is a school under the control of BOE.

16.    During school hours in which alleged abuse occurred, BOE had custody, control, supervision, care, and authority over Plaintiff as a minor student at RVHS.

17.    The Administrators, Coach Huck, and the BOE demonstrated deliberate indifference in their failure follow BOE policy to investigate or report allegations and complaints about Paige Huck's sexual misconduct with Plaintiff and numerous others despite rumors, indications, evidence, actual complaints, and written and oral reprimands about such conduct over the course of nearly two decades.

18.    The failure of the Administrators, Coach Huck, and the BOE to investigate, prevent, and report allegations of sexual abuse and harassment by Paige Huck despite knowledge of prior improper conduct constitutes a state-created danger and deliberate indifference to known sexual harassment and abuse.

## FACTUAL ALLEGATIONS

### Paige Huck's History

19.    Paige Huck was hired by RVHS as the freshman cheerleading advisor in 1999. She continued in various positions, including, but not limited to, assistant track coach, junior varsity cheerleading coach, varsity cheerleading coach, and substitute teacher at RVHS until 2008.

20.    As early as 2001, even prior to her marriage to Coach Huck, Paige Huck engaged in inappropriate sexual activity with RVHS students.

21.    Paige Huck, at all relevant times herein, was the spouse of RVHS wrestling coach and teacher, Coach Huck. Paige Huck and Coach Huck divorced on or about January 14, 2020, after Plaintiff graduated from high school.

**Defendants' Ignored and Concealed the Hucks' Inappropriate Behavior**

22.     Paige Huck and Coach Huck would frequently host parties, sleepovers, and "lock ins" at their private residence, which typically included members of the cheerleading squad, football team, wrestling team, and/or FFA organization.

23.     In November of 2004, the Hucks hosted a "lock in" for the RVHS cheerleaders and wrestlers at their private residence.

24.     At this "lock in", the Hucks played pornography for the students on the television in the living room.

25.     In addition, Paige Huck engaged in sexual intercourse with *numerous* male students. Male students stood in a line and took turns having sex with Paige Huck in the bedroom, while Coach Huck stood next to them and watched the sexual activity.

26.     Three cheerleaders who witnessed the above-described events, immediately reported what they saw to Principal Jacobs on the next school day. They specifically told him about the pornography, Paige Huck having sex with students, and Coach Huck watching all of this. Principal Jacobs simply said he would "look into it."

27.     These cheerleaders were never contacted again regarding what they reported to Principal Jacobs.

28.     No investigation or report of Coach Huck and Paige Huck's misconduct was performed by Defendant BOE or its employees, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) et. seq., Ohio Revised Code §2151.421, as well as BOE policy.

29.     Following this report to Principal Jacobs, the cheerleaders were harassed by multiple RVHS staff members, including Paige Huck, prompting one to quit cheerleading altogether. This fact indicates that Principal Jacobs failed to protect the identity of the witnesses

who reported the inappropriate behavior, subjecting them to harassment, and discouraging any future witnesses from being honest and forthright about what they saw the Hucks doing with students.

30.     The report to Principal Jacobs is not noted in the personnel files of Paige Huck or Coach Huck, thus preventing this report from ever becoming a public record accessible to Plaintiff.

31.     In 2004, the Hucks hosted a gathering at their home, where minor students engaged in drinking alcohol and smoking. There were many wrestlers and football players present, in addition to the cheerleaders, most of whom were juniors and seniors.

32.     **Victim A** – then a 16-year-old student at RVHS – attended this gathering at the Huck's home, as she was on the cheerleading squad. During the gathering, **Victim A** was laying on the floor when Paige Huck and Coach Huck came and laid beside her. Coach Huck put his hand down the shirt of **Victim A**, and she froze up and pretended to be asleep. Paige Huck then asked Coach Huck "is she asleep?" Coach Huck proceeded to put his hand down the pants of **Victim A** and began touching her vagina. **Victim A** continued to pretend to be asleep, but then got up from the encounter, crying, and headed to the bathroom.

33.     **Victim A** asked a friend to take her home. During the drive, the friend told **Victim A** that the same type of assault happened to her, at the hands of the Hucks.

34.     **Victim A** went to see the guidance counselor at RVHS to report that Coach Huck had touched her. The Assistant Principal at the time, Principal Moore, overheard what **Victim A** reported about Coach Huck. Principal Moore then intervened, grabbing **Victim A** by the shoulders and said, "we can talk about this later."

35.     **Victim A** was never approached by anyone, including Principal Moore or the guidance counsel, to further discuss this report of sexual assault.

36.     **Victim A** later learned from younger students that Coach Huck was bragging about his assault of **Victim A**.

37.     Defendants, including Administrators with authority to take corrective action after learning of the abuse and assault allegations, took no action to investigate or report the complaint made by **Victim A**, thus preventing the report or complaint from ever becoming a public record.

38.     The cheerleaders' report to Principal Jacobs and the complaint lodged by **Victim A** first became a public record, through the Complaint filed in the case *John Doe 1 v. Gallia County Local Schools BOE*, 2:23-cv-03875, which Plaintiff heard about and reviewed.

### Sexual Contact with Victims B and C

39.     Paige Huck had sexual contact during the 2005-2006 school year with **Victim B**, then a 17-year-old senior wrestler at RVHS. This sexual contact happened on at least two occasions during the 2005-2006 school year, prior to **Victim B's** graduation from high school. The incidents of sexual contact occurred during an end-of-season wrestling sleepover and at a separate party (with underage students and alcohol), both held at the Huck residence. Paige Huck was employed by the BOE at the time of the sexual contact with **Victim B**, as a cheerleading coach at RVHS. Coach Huck was present at his home when **Victim B** had sex with Paige Huck, and was aware of the sexual activity between his wife and his student/wrestler, even facilitating such sexual activity in the Huck's bedroom.

40.     Paige Huck had sexual contact with **Victim C**, another wrestler who was a 13-year-old at the time that the sexual encounters began. Victim C was a middle-schooler, but was invited by Coach Huck to practice with the high school wrestling team. Sexual encounters with Paige Huck continued on several occasions between 2003-2008. Paige Huck was employed by the BOE at the time, as RVHS cheerleading coach and a substitute teacher.

41.     The first sexual contact with **Victim C** occurred when Paige Huck performed oral sex on **Victim C** (then age 13) in the Hucks' van on the way home from a wrestling meet held at another school. Coach Huck was driving the van and three other students were also in the van at the time.

42.     Sexual encounters continued through **Victim C's** high school years while he was a wrestler at RVHS. These activities occurred in the Huck residence, the Hucks' van, and often involved the use of alcohol and prescription drugs, sometimes provided by the Hucks.

43.     On another occasion, Paige Huck had sexual contact with **Victim C** and another **unidentified minor student** at the same time, at the Huck residence.

44.     **Victim C** had dozens of sexual encounters with Paige Huck through his middle school and high school experience. On several occasions, Coach Huck was home while **Victim C** was having sex with Paige Huck at the Huck home. On more than one occasion, **Victim C** saw Coach Huck watching him have sex with Paige Huck through the opening in the bedroom door.

**Grooming of, and Repetitive Sexual Contact with, Plaintiff John Doe 3**

45.     During the spring semester of 2007, Paige Huck began grooming **John Doe 3** for a sexual relationship, with inappropriate comments and physical contact, including during an FFA sleepover held in the RVHS gymnasium. Specifically, these interactions occurred on the stage in the gym, where wrestling mats were laid down for the students (and adults) to sleep.

46.     At the time she first interacted with **John Doe 3**, Paige Huck was employed by the BOE as the RVHS cheerleading coach and a substitute teacher. **John Doe 3** was a 17-year-old at the time.

47.     Thereafter, Paige Huck commenced aggressive grooming of **John Doe 3** through direct and text messaging. She also invited **John Doe 3** to spend lots of time at the Huck

residence, including riding 4-wheelers with Paige Huck, Coach Huck, and many other people. During these activities, the Hucks provided **John Doe 3** with alcohol, and they would ride all night, after which **John Doe 3** would be invited to sleep over at the Huck residence.

48.     On one occasion during the summer of 2007, **John Doe 3** was attending a cookout at the Huck residence. While the attendees were in the basement of the home, Paige Huck took **John Doe 3** upstairs to the living room couch, where she climbed on top of him and began kissing and groping him. During this activity, Coach Huck came into the room and looked at the two of them, and then walked out of the room. **John Doe 3** became very scared and nervous, but Paige Huck reassured him that Coach Huck knew what she was doing, and was okay with it.

49.     Paige Huck had sex with **John Doe 3** numerous times during the summer of 2007.

50.     Knowing that her sexual activity with **John Doe 3** was wrong and would not be acceptable to anyone who found out, Paige Huck gave **John Doe 3** thirty to forty dollars, and instructed him to purchase a burner phone, which she could use to text with him to avoid detection of their communications.

51.     Coach Huck, fully aware of the sexual activity between his wife and **John Doe 3**, devised another method of concealing their illicit activity from those in the community. Coach Huck instructed **John Doe 3** to drive to the bowling alley and park his vehicle in back, out of sight, where Coach Huck would pick him up and drive **John Doe 3** to the Huck residence for the explicit purpose of sexual encounters with Paige Huck. These efforts were undertaken to ensure that nobody was aware **John Doe 3** was at the Huck residence. After the sexual encounter, Coach Huck would drive **John Doe 3** back to his vehicle at the bowling alley, and

then return to his home to have sex with Paige Huck himself. These steps were taken to conceal sexual encounters at least ten (10) times.

52.     Paige Huck also engaged in sexual activity with **John Doe 3** in a hotel room at the 2007 National FFA Convention in October of 2007, during his senior year. **John Doe 3** was invited by the Hucks to attend the Convention, despite not qualifying as a participant since he only recently joined FFA at the start of his senior year, and attendees were required to have been members for at least a year.

53.     In total, Paige Huck had sexual intercourse with **John Doe 3** between 50 and 60 times during his high school experience. In addition, Paige Huck engaged in other sexual activity and inappropriate groping with **John Doe 3** on countless other occasions, including at friends' homes, in the "Ag room" at RVHS, in Matthew Huck's office at RVHS, in the wrestling room at RVHS, and in private vehicles on the RVHS campus.

54.     Following more than a year of sexual activity between Paige Huck and **John Doe 3**, the administration of RVHS became aware of the sexual abuse of **John Doe 3** and possibly others. However, rather than fully and properly investigate the sexual activity, the BOE instead quietly allowed Paige Huck to stop teaching, without any report or investigation. The BOE allowed this despite the prior reports of Paige Huck's sexual conduct with students, including the reports made by the three cheerleaders and, separately, by **Victim A**.

55.     No investigation or report of Paige Huck's misconduct with **John Doe 3** was performed by Defendant BOE or its employees, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) et. seq., Ohio Revised Code §2151.421, as well as BOE policy.

56.     Upon information and belief, Paige Huck's egregious misconduct was resolved in a private agreement between her and the prior RVHS administration, the terms of which resulted in her resignation and a supposed prohibition from her entering the RVHS campus.

**Paige Huck Given Access to Additional Victims**

57.     Despite knowledge of Paige Huck's inappropriate actions with students, RVHS administrators did not enforce their prohibition on Paige Huck entering RVHS school grounds. On the contrary, Paige Huck continued interacting with students on RVHS grounds with the constructive and actual knowledge of RVHS administration and the BOE. Consequently, Paige Huck was given free rein to prey upon, groom, and ultimately have sexual contact with additional RVHS students from 2008 through 2019.

58.     In February 2011, following an inappropriate altercation with students at a wrestling meet, an authorized representative of the BOE limited Paige Huck's presence at RVHS to that of spectator only, and documented concerns about her questionable and inappropriate conduct.

59.     Between 2014 and 2016, Paige Huck was again permitted to enter the RVHS campus, where she groomed, and then initiated and maintained sexual contact with at least two additional RVHS students.

60.     A letter dated September 28, 2016 written by Superintendent Meyers to Paige Huck and signed by Principal Edwards barred Paige Huck (again) from the RVHS campus for all activities that did not directly involve her children. This letter was maintained in Paige Huck's personnel file with the BOE and referenced "deep concerns" over Paige Huck's conduct with RVHS students. The letter also notes that Superintendent Meyers had been aware of concerns within the community for several years. This letter references that it was given to

Paige Huck in the presence of Superintendent Meyers, Principal Edwards and Assistant

Principal Stevens on September 28, 2016. See **EXHIBIT A**, attached hereto.

61.     Paige Huck was nonetheless permitted to be present on campus thereafter, and

she continued to initiate sexual contact with multiple other students, including **Victim E** and

**Victim F** (aka **John Doe 1** and **John Doe 2**).

**BOE Failures**

62.     The BOE published, in relevant part, the following Title IX Policy in its

handbook:

    a.  "The Board has created informal and formal discrimination and harassment grievance procedures, providing for a prompt and equitable investigation and resolution of complaints of sex discrimination, including sexual misconduct."

    b.  "District employees are required to report these incidents to the Title IX Coordinator upon becoming aware of an incident, and failure to do so may result in disciplinary action."

    c.  **Definition of Sexual Harassment**: Unwelcome sexual advances, requests for sexual favors or other verbal, nonverbal, or physical conduct of a sexual nature may constitute sexual harassment when…

        i.  such conduct is sufficiently severe, persistent, or pervasive and has the purpose or effect of unreasonably interfering with an individual's work or educational performance by creating an intimidating, hostile or abusive environment, or by interfering with one's ability to participate in or benefit from a class or educational program or activity.

    d.  **"Sexual harassment** includes gender-based harassment, which refers to unwelcome conduct based on an individual's actual or perceived sex… Examples of sexual harassment-type conduct may include, but are not limited to, unwanted sexual advances… grooming; repeated sexual jokes, flirtations, advances or propositions;… graphic verbal commentary relating to… sexual prowess; coerced sexual activities; any unwanted physical contact; sexually suggestive or obscene comments or gestures; or displays in the workplace of sexually suggestive or obscene objects or pictures… All of these types of harassment are considered forms of sex discrimination prohibited by Title IX."

63.     As detailed in preceding paragraphs, Coach Huck's and Paige Huck's conduct,

dating back to 2004, included sexual advances, grooming, flirtations, propositions, graphic

sexual commentary, gestures, and photographs, all of which constitute forms of sexual

harassment as defined by Title IX and BOE policy.

64. The Administrators never reported any complaints of sexual harassment,

including Plaintiff's, to the Title IX coordinator as required by BOE Policy. The BOE Policy

Handbook also published, in relevant part:

> e. "All employees of the District who know or have reasonable cause to suspect that
> a child under 18 years of age or a disabled child under 21 years of age has suffered,
> is suffering or faces a threat of suffering any type of abuse or neglect are required
> to immediately report such information to the public children services agency or
> the local law enforcement agency… To ensure prompt reports, procedures for
> reporting are made known to the school staff… The Board directs the
> Superintendent/designee to develop a program of in-service training in child
> abuse prevention; violence; school safety… Training is also provided on the
> Board's harassment, intimidation, or bullying policy."

65. Plaintiff trusted that BOE and the Administrators would comply with all

applicable state and federal laws as well as custom, policy, and practice in their own handbook

that exist to keep students safe, especially from sexual abuse, assault, and harassment.

66. BOE, by and through its authorized officials, including the Administrators and

other RVHS personnel, failed to report numerous complaints of sexual abuse and harassment,

including the known sexual activity between Plaintiff and Paige Huck, to the public children

services agency or the local law enforcement agency.

67. The BOE failed to report Paige Huck's prior sexual abuse of a minor. Such

omissions and failures rendered other students, including Plaintiff, more vulnerable to the same

sexual abuse suffered by the victims of which the BOE was aware and had prior knowledge.

68. The BOE had knowledge of Paige Huck's prior sexual misconduct with minor

students at RVHS for at least three (3) years before the sexual abuse, assault, and manipulation

of Plaintiff began.

69.     The BOE failed Plaintiff and other victims not named in this lawsuit in an unimaginable way. The BOE allowed a perverse, abusive, predatory, and unsafe environment to exist in RVHS for a decade or longer, despite actual knowledge, well-circulated rumors, and specific complaints about Paige Huck's sexual misconduct.

**Plaintiff's Damages**

70.     As a result of the events alleged herein, Plaintiff was denied an equal educational opportunity and freedom from sexual and physical abuse due to the hostile environment created by the Defendants. The sexual abuse and harassment alleged herein was so severe, persistent, and pervasive that it unreasonably interfered with Plaintiff's ability to participate and benefit fully from the educational and extracurricular program at RVHS.

71.     Plaintiff was traumatized by the sexual abuse. Plaintiff has suffered and continues to suffer from anxiety, emotional distress, humiliation, guilt, embarrassment, and anger caused by the events alleged herein. Such trauma will affect him emotionally and psychologically for the rest of his life.

**<u>CLAIMS FOR RELIEF</u>**

**<u>Count I – Violation of Bodily Integrity Under the Fourth and Fourteenth Amendments to the U.S. Constitution, *via* 42 U.S.C. §1983</u>**
**(All Defendants)**

72.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

73.     At all times relevant herein Plaintiff had a right to bodily integrity which is protected by the Fourth and Fourteenth Amendments to the United States Constitution. Such rights were violated by the actions of all Defendants.

74.     Defendants are state actors and were acting under color of state law.

75.    The Defendant BOE, by and through its authorized officials, including, but not limited to its superintendent, principal(s), teacher(s), and coach(s), failed to adhere to its official district policies. Specifically, there was a failure to conduct a prompt and equitable investigation and resolution of reports made of sexual abuse, harassment, and grooming, dating back to 2004, before Plaintiff became an RVHS student.

76.    Further, there was a failure of Defendants to report known or suspected sexual abuse, harassment, and grooming to the public children services agency or the local law enforcement agency, dating back to 2004, before Plaintiff became an RVHS student.

77.    The sexual harassment, abuse, and grooming committed by Paige Huck and Coach Huck occurred, in part, on the RVHS campus. Furthermore, Defendant BOE, by and through its authorized officials, was made aware of the alleged sexual abuse by the Hucks, including by numerous complaints.

78.    The BOE's failure to adhere to its own policy constituted an omission that manifests deliberate indifference to the rights of students, including Plaintiff, as well as other minor students as detailed in this complaint. The BOE's omission of these district policies, in part, proximately caused the deprivation of and infringement upon Plaintiff's constitutional rights.

79.    The Defendant BOE had an affirmative duty to protect its students from harm when there existed a state-created danger; a violation of this duty under these circumstances is actionable under 42 U.S.C. §1983.

80.    Defendants, including Administrators with authority to take corrective action after learning of the abuse and assault allegations, took no action to investigate or report the complaints made by the cheerleaders or **Victim A**, thus preventing the reports or complaints from ever becoming a public record.

81.     The cheerleaders' report to Principal Jacobs and the complaint lodged by **Victim A** first became a public record, through the Complaint filed in the case *John Doe 1 v. Gallia County Local Schools BOE*, 2:23-cv-03875 on November 20, 2023, which Plaintiff heard about and reviewed.

82.     The harm Plaintiff suffered as a result of the sexual abuse and harassment by Paige Huck and Coach Huck was both known and foreseeable, as Defendants were aware of prior reports and had prior knowledge that Paige Huck had previously engaged in inappropriate sexual behavior with male students at RVHS, with the knowledge and involvement of Coach Huck. Plaintiff's harm was direct in that Paige Huck sexually abused Plaintiff in the same manner, with the awareness and assistance of Coach Huck.

83.     The Defendants' knowledge of the potential danger to RVHS students and the failure to put measures in place to prevent such harm shocks the conscience as they were aware of such conduct for more than three (3) years before Plaintiff's sexual abuse occurred. It is beyond the bounds of basic humanity to continually put minor students in a position in which they were aware that sexual abuse could and did occur – and do nothing to stop it.

84.     As a minor student and FFA member at RVHS when the abuse occurred, Plaintiff was patently subject to and vulnerable to the potential harm brought about by the Defendant BOE's failure to prevent Paige Huck's presence on RVHS campus given their knowledge of her history of sexual abuse. Such deliberate indifference and a failure to remove Paige Huck from her position and from the RVHS campus rendered Plaintiff more vulnerable to the danger of sexual abuse.

85.     As a proximate result of Defendants' deliberate indifference to school policy as detailed above, Plaintiff suffered a violation of his constitutionally-protected rights. In turn, the

omission by the Defendant BOE proximately caused Plaintiff significant emotional and psychological trauma, which is actionable under 42 U.S.C. §1983.

86.    Additionally, the Defendant BOE condoned and ratified the above-alleged violations through its deliberate indifference to its own policy, and through the involvement of its employee, Coach Huck, which proximately caused Plaintiff's emotional and psychological injuries.

87.    As a result of the deprivation of Plaintiff's constitutional rights, Plaintiff suffered and continues to suffer severe emotional distress and trauma.

88.    As a result of the deprivation of Plaintiff's constitutional rights and resulting emotional and psychological trauma, Plaintiff is seeking special damages in an amount to be proven at trial.

89.    Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to recover all reasonable attorney's fees and costs expended in this action.

### Count II - Violation of Title IX of the Educational Amendments
### (Defendant BOE)

90.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

91.    Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a)("Title IX"), states that, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

92.    Title IX is effectuated through the 34 Code of Federal Regulations, Part 106. 34 C.F.R. § 106.4(a) provides:

> Every application for Federal financial assistance shall as condition of its
> approval contain or be accompanied by an assurance from the applicant or

recipient, satisfactory to the Assistant Secretary, that the education program or activity operated by the applicant or recipient and to which this part applies will be operated in compliance with this part.

93.     At all relevant times, the Defendant BOE received federal financial assistance and, based on 34 C.F.R. § 106.4(a), was therefore subject to and required to comply with Title IX.

94.     Sexual harassment is unwelcome conduct of a sexual nature. It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

95.     The sexual abuse and harassment of Plaintiff by Paige Huck and Coach Huck, which included sexual intercourse, sexual activities, sexual advances, sexual imposition, inappropriate touching, sexual propositions, graphic commentary, sexually suggestive and obscene comments, meets the definition of sexual harassment under Title IX, as well as under the BOE's policy.

96.     Coach Huck's deliberate indifference to, and/or grooming of Plaintiff for the sexual exploitation by his then-wife, Paige Huck meets the definition of sexual harassment under Title IX, as well as under Defendant BOE's policy.

97.     The sexual abuse, harassment, and grooming suffered by Plaintiff created a hostile environment in which Plaintiff did not feel safe in school or at school-related events, which constitutes sexual discrimination in violation of Title IX.

98.     The Administrators and the BOE were required to investigate, report, and properly address complaints against Paige Huck and Coach Huck, including Plaintiff's complaint, per Title IX and BOE policy.

99.     All Defendants failed to report allegations of abuse to the Title IX coordinator and as such, none of the policies in place to investigate, determine disciplinary measures, and

protective measures for the victim were ever utilized, which constitutes a failure to comply with both Title IX and BOE policy, and is therefore a violation of Title IX.

100.     Defendant BOE had actual and constructive knowledge of significant concerns about Paige Huck and Coach Huck's inappropriate conduct with RVHS students based on prior reports of abuse dating back to 2004.

101.     The Administrators, and through its agency, Defendant BOE, had actual knowledge of the allegations of sexual abuse, harassment, and grooming by Paige Huck and Coach Huck, based on multiple prior complaints.

102.     Upon information and belief, following the reports and complaints alleging sexual abuse to RVHS personnel, neither Paige Huck, nor Coach Huck was interviewed or questioned by administrators about these allegations.

103.     Defendants, including Administrators with authority to take corrective action after learning of the abuse and assault allegations, took no action to investigate or report the complaints made by the cheerleaders or **Victim A**, thus preventing the reports or complaints from ever becoming a public record.

104.     The cheerleaders' report to Principal Jacobs and the complaint lodged by **Victim A** first became a public record, through the Complaint filed in the case *John Doe 1 v. Gallia County Local Schools BOE*, 2:23-cv-03875 on November 20, 2023, which Plaintiff heard about and reviewed.

105.     Defendants BOE and the Administrators, by their acts and omissions, and as individuals with authority to take corrective action, acted with deliberate indifference by so deficiently responding to allegations of sexual harassment in a manner that was "clearly unreasonable in light of the known circumstances."

106.     The conduct suffered by Plaintiff at the hands of Defendants was so severe, pervasive, and objectively offensive that it effectively denied him equal access to educational programming.

107.     The sexual abuse, harassment, and grooming suffered by Plaintiff created a hostile environment that was so severe, pervasive, and objectively offensive that it denied him equal access to the benefits and opportunities of his educational programming, including, but not limited to safe participation in extra-curricular activities unmarred by abuse and harassment.

108.     As a direct and proximate result of Defendants' collective violations of Plaintiff's Title IX rights, Plaintiff has suffered and continues to suffer immense emotional, psychological, and mental trauma, embarrassment, depression, guilt, and shame. As a result, Plaintiff has also sustained injuries and damages, including, but not limited to, economic loss; educational loss; medical and pharmaceutical costs; lost and/or diminished wages, damage to his good name; and loss of the ordinary pleasures of everyday life.

109.     Plaintiff is entitled to damages for the emotional and psychological harm detailed in the preceding paragraphs, including attorney fees.

### Count III – Violation of Title IX – Heightened Risk of Sexual Harassment
### (Defendant BOE)

110.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

111.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, et seq.

112.     In *Doe v. Metro. Gov't & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022), the Court of Appeals for the Sixth Circuit adopted the Ninth Circuit test for Title IX pre-assault claims,

which provides: "A student must show: 1) the school maintained a policy of deliberate indifference to reports of sexual misconduct, 2) which created a heightened risk of sexual harassment that was known or obvious, 3) in a context subject to the school's control and 4) as a result the plaintiff suffered harassment that was 'so severe, pervasive and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.'" *Id.* at 465 (*citing Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).

113.    The Court further held that, when alleging post-assault claims, K-12 students need not prove that further harassment must be inflicted against the same victim. Instead, the *Doe* Court held that the "same victim" requirement from *Kollaritsch*–which involved a university–did not apply in the K-12 context because K-12 schools have more authority and control over students than at the university level. *Id.* at 468.

114.    Here, Plaintiff was subjected to sex-based abuse and harassment committed by Paige Huck and facilitated by Coach Huck.

115.    The Administrators, and through its agency, Defendant BOE, had actual knowledge of the allegations of sexual abuse, harassment, and grooming by Paige Huck and Coach Huck, based on multiple prior complaints.

116.    Defendants, including the BOE and Administrators, demonstrated a policy of deliberate indifference to multiple reports of sexual harassment perpetrated by Paige Huck and Coach Huck as outlined previously in this complaint, failing to timely investigate and respond to the harassment of prior students, failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

117.    Defendants' policy of deliberate indifference created a heightened risk of sexual harassment to Plaintiff that was known or obvious.

118. Defendants' policy of deliberate indifference caused Plaintiff to experience sexual harassment and assault.

119. Defendants, including Administrators with authority to take corrective action after learning of the abuse and assault allegations, took no action to investigate or report the complaints made by the cheerleaders or **Victim A**, thus preventing the reports or complaints from ever becoming a public record.

120. The cheerleaders' report to Principal Jacobs and the complaint lodged by **Victim A** first became a public record, through the Complaint filed in the case *John Doe 1 v. Gallia County Local Schools BOE*, 2:23-cv-03875 on November 20, 2023, which Plaintiff heard about and reviewed.

121. Plaintiff suffered harassment that was so severe, pervasive and objectively offensive that it can be said to have deprived the Plaintiff of access to the educational opportunities or benefits provided by the school.

122. As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, economic loss; educational loss; medical and pharmaceutical costs; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; damage to his good name; and loss of the ordinary pleasures of everyday life.

### Count IV – Violation of the Standard in *Monell v. Dept. of Social Services* via 42 U.S.C. Section 1983
### (Defendant BOE)

123. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

124. The actions of the Defendant BOE, in failing to properly supervise and train its officials, coaches and administrators in proper methods of recognizing, responding to and

preventing harassment and retaliation, and in permitting ongoing harassment and failing to supervise Paige Huck and Coach Huck, constitute a violation of the BOE's obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

125.    Reasonable persons in the Defendant's position would have concluded that maintaining such policies, practices and procedures that allowed and/or perpetuated the harassment of students by its employees was unconstitutional.

126.    Defendants, including Administrators with authority to take corrective action after learning of the abuse and assault allegations, took no action to investigate or report the complaints made by the cheerleaders or **Victim A**, thus preventing the reports or complaints from ever becoming a public record.

127.    The cheerleaders' report to Principal Jacobs and the complaint lodged by **Victim A** first became a public record, through the Complaint filed in the case *John Doe 1 v. Gallia County Local Schools BOE*, 2:23-cv-03875 on November 20, 2023, which Plaintiff heard about and reviewed.

128.    As a direct result of the actions and conduct of Defendant BOE, Plaintiff suffered and continues to suffer extreme emotional pain and suffering, lost wages, medical and prescription costs, a loss of educational opportunities and a loss of meaningful associations.

### Count V – Childhood Sexual Assault and Battery Under Ohio Rev. Code §2305.111
**(Paige Huck and Coach Huck)**

129.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

130.    At all times relevant herein, Paige Huck and Coach Huck were employed by Defendant BOE as a teacher/cheerleading advisor and teacher/FFA advisor/wrestling coach,

respectively. Plaintiff was a minor child enrolled at RVHS as a student and FFA member, under the control of Paige Huck and Coach Huck.

131.    Paige Huck and Coach Huck groomed Plaintiff for sexual exploitation and later sexual abuse while Plaintiff was enrolled at RVHS and a member of FFA.

132.    Paige Huck engaged in sexual conduct with Plaintiff by coercing him in a manner that prevented resistance by a person in Plaintiff's position as a minor, subject to her control and that of Coach Huck, her husband.

133.    Paige Huck intentionally engaged in sexual conduct with Plaintiff, a minor, in violation of Ohio Rev. Code §2907.03(A)(1) and (7) (Sexual Battery).

134.    Paige Huck had intentional sexual contact with Plaintiff, a minor, knowing that it was reckless, in violation of Ohio Rev. Code §2907.06(A)(1)(Sexual Imposition).

135.    Coach Huck solicited, enabled, encouraged, and endorsed the sexual conduct between Plaintiff and Paige Huck, thereby abusing his position of authority over Plaintiff, in violation of Ohio Rev. Code §2907.06 (Sexual Imposition).

136.    The actions of Paige Huck and Coach Huck constituted child sexual abuse as Plaintiff was under 18 years old at the time of the abuse, which is actionable under Ohio Rev. Code §2305.111.

137.    All of Plaintiff's claims alleged herein are connected to and stem from childhood sexual abuse as defined by Ohio Rev. Code §2305.111 and are therefore properly asserted in this complaint.

138.    The abuse of Plaintiff occurred after August 3, 2006, and Defendants herein engaged in acts and omissions that fraudulently concealed from Plaintiff the fact that the BOE and Administrators had received numerous reports about abuse of prior students by Paige Huck and Coach Huck. Despite any due diligence taken by Plaintiff, he could not have

discovered these facts earlier, as Defendants ensured these prior reports of abuse were never made a public record through educator employment files, police reports, or children's services reports.

139.     Accordingly, Plaintiff's statute of limitations was tolled until his discovery of the facts forming the basis for this Complaint, and this Complaint is timely filed pursuant to Ohio Rev. Code 2305.111(C)(1).

### Count VI – Damages for Criminal Act under Ohio Rev. Code §2307.60
### (Paige Huck, Coach Huck, the Administrators)

140.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

141.     Plaintiff has a cause of action under Ohio law for damages stemming from Defendants' criminal acts.

142.     Page Huck committed sexual battery and sexual imposition of Plaintiff, and other criminal acts, on multiple occasions. Sexual battery and sexual imposition are crimes under Ohio law, pursuant to Ohio Rev. Code §§2907.03 and 2907.06, respectively.

143.     Coach Huck committed sexual imposition of Plaintiff, and other criminal acts, on multiple occasions. Sexual imposition is a crime under Ohio law, pursuant to Ohio Rev. Code §2907.06.

144.     Paige Huck and Coach Huck each engaged in conduct that constituted child sexual abuse as Plaintiff was under 18 years old at the time of the abuse, which is actionable under Ohio Rev. Code §2305.111.

145.     Coach Huck and the Administrators also committed criminal acts under Ohio Rev. Code §2151.421, by failing to report alleged child abuse upon receiving information alleging abuse, beginning as early as 2004.

146. The abuse of Plaintiff occurred after August 3, 2006, and Defendants herein engaged in acts and omissions that fraudulently concealed from Plaintiff the fact that the BOE and Administrators had received numerous reports about abuse of prior students by Paige Huck and Coach Huck. Despite any due diligence taken by Plaintiff, he could not have discovered these facts earlier, as Defendants ensured these prior reports of abuse were never made a public record through educator employment files, police reports, or children's services reports.

147. Accordingly, Plaintiff's statute of limitations was tolled until his discovery of the facts forming the basis for this Complaint, and this Complaint is timely filed pursuant to Ohio Rev. Code 2305.111(C)(1).

148. As a direct and proximate result of the commission of these criminal acts, Plaintiff suffered significant injuries and damages.

149. Plaintiff seeks, and Ohio Rev. Code §2307.60 authorizes, full damages in a civil action including but not limited to the costs of maintaining the action, attorney fees, and punitive damages.

### Count VII – Negligent, Reckless and Intentional Misconduct
**(All Defendants)**

150. Plaintiff incorporates his previous allegations as if fully rewritten herein.

151. Paige Huck and Coach Huck, sexually groomed and, thereafter sexually abused Plaintiff, a minor in violation of Ohio Rev. Code §2907.03(A)(7).

152. Defendants recklessly and intentionally disregarded complaints about the Hucks' behavior and actions toward Plaintiff and numerous other students.

153. Defendants had independent duties to report any abuse allegations or suspicious conduct of the Hucks, pursuant to Ohio Rev. Code §2151.421 and other Ohio law.

154.     Defendants recklessly and intentionally breached their respective duties to report such sexual abuse of a student pursuant to Ohio Rev. Code §2151.421.

155.     Defendants joint and several actions constitute negligence per se and, therefore, are exempt from application of Ohio Rev. Code §2744, et seq., pursuant to Ohio Rev. Code §2744.02(B)(5).

156.     Defendants, through their agents and employees, recklessly and intentionally failed to report said sexual abuse of Plaintiff, by the Hucks, despite actual and/or constructive knowledge of the abuse.

157.     Defendants recklessly and intentionally failed to properly investigate complaints relating to the Hucks' abuse of students, including Plaintiff.

158.     Defendants acted in bad faith, and/or in a wanton or reckless manner with respect to complaints about the Hucks' abuse of students.

159.     The abuse of Plaintiff occurred after August 3, 2006, and Defendants herein engaged in acts and omissions that fraudulently concealed from Plaintiff the fact that the BOE and Administrators had received numerous reports about abuse of prior students by Paige Huck and Coach Huck. Despite any due diligence taken by Plaintiff, he could not have discovered these facts earlier, as Defendants ensured these prior reports of abuse were never made a public record through educator employment files, police reports, or children's services reports.

160.     Accordingly, Plaintiff's statute of limitations was tolled until his discovery of the facts forming the basis for this Complaint, and this Complaint is timely filed pursuant to Ohio Rev. Code 2305.111(C)(1).

161.     Plaintiff's injuries and damages were a direct and proximate result of Defendants' respective negligence, wanton misconduct, and recklessness.

162.    As a direct and proximate result of the conduct, actions, failures to act, and inactions of the Defendants as described herein, Plaintiff sustained severe and permanent injuries, as set forth herein.

**Count VIII – Intentional Infliction of Emotional Distress**
**(All Defendants)**

163.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

164.    Defendants knew that repeated sexual abuse, harassment, and grooming of Plaintiff would be reasonably likely to cause severe emotional distress.

165.    Defendants reasonably knew that failing to remove Paige Huck from her employment and presence on campus would place RVHS students, including Plaintiff, in potentially abusive situations that would reasonably cause severe emotional distress.

166.    Coach Huck knew that facilitating overnight stays and sexual encounters with his then-wife would place such students, including Plaintiff, in potentially abusive situations that would reasonably cause severe emotional distress.

167.    Defendants failed to properly investigate and report following multiple prior complaints of inappropriate and sexual behavior involving Paige Huck and Coach Huck, which permitted students, including Plaintiff, to be in a position that would reasonably cause severe emotional distress.

168.    The egregious and perverse conduct by Paige Huck and Coach Huck, coupled with the indifferent response of the Administrators, was extreme, outrageous, and beyond the bounds of human decency; such conduct should be considered intolerable in a civilized society.

169.    The abuse of Plaintiff occurred after August 3, 2006, and Defendants herein engaged in acts and omissions that fraudulently concealed from Plaintiff the fact that the BOE

and Administrators had received numerous reports about abuse of prior students by Paige

Huck and Coach Huck. Despite any due diligence taken by Plaintiff, he could not have

discovered these facts earlier, as Defendants ensured these prior reports of abuse were never

made a public record through educator employment files, police reports, or children's services

reports.

170.    Accordingly, Plaintiff's statute of limitations was tolled until his discovery of the

facts forming the basis for this Complaint, and this Complaint is timely filed pursuant to Ohio

Rev. Code 2305.111(C)(1).

171.    Defendants were the proximate cause of Plaintiff's mental and emotional

injuries. Such injuries were of a nature that no reasonable person in Plaintiff's position should

be expected to endure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.      A jury trial for all issues pursuant to Fed.R.Civ.P. 38(b);

2.      That each Defendant be required to answer within the time prescribed by law;

3.      A declaration that the acts and conduct of all Defendants constitute violations of

Plaintiff's constitutional, statutory, and common-law rights;

4.      An award to Plaintiff against all Defendants, jointly and severally, and an

appropriate amount of compensatory and punitive damages;

5.      Equitable relief forcing Defendants to enact and follow policies to protect

students in attendance from sexual abuse;

6.      An award to Plaintiff against all Defendants, jointly and severally,

reimbursement for appropriate court costs and reasonable attorney fees;

7.      An award to Plaintiff for any other relief the court deems appropriate.

Respectfully submitted,

*s/ Craig S. Tuttle*
Craig S. Tuttle (0086521)
John A. Markus (0093736)
LEESEBERG TUTTLE, L.P.A.
175 S. Third Street, Penthouse One
Columbus, Ohio 43215
Tel: 614/221.2223
Fax: 614/221.3106
Email: ctuttle@leeseberglaw.com
        jmarkus@leeseberglaw.com

*s/ Mark A. Weiker*
Mark. A. Weiker (0086413)
ABDNOUR WEIKER, L.L.P.
262 S. Third Street
Columbus, Ohio 43215
Tel: 614/745.2001
Fax: 614/417.5081
Email: mark@education-rights.com

*Trial Attorneys for Plaintiffs*


## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,

*s/ Craig S. Tuttle*
Craig S. Tuttle